## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| NOVAPRO HOLDINGS, LLC, *et al.*, | ) | Case No. 14-10895 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered and |
| | ) | Substantively Consolidated) |
| | ) | |
| CHARLES A. STANZIALE, in his | ) | |
| capacity as Chapter 7 Trustee of the | ) | |
| Bankruptcy Estate of NovaPro | ) | |
| Holdings, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 16-50435 (LSS) |
| | ) | |
| v. | ) | |
| | ) | Docket Ref. No. 57, 58, 60 |
| U.S. RISK INSURANCE GROUP, | ) | |
| INC; ISLLC INVESTMENTS, INC. | ) | |
| a/k/a ILSSC INVESTMENTS, INC.; | ) | |
| RANDALL G. GOSS; and JOHN | ) | |
| DOES I-X, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM ORDER</u>

Before the Court is the Trustee's Motion for Approval of Settlement of Claims

Pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion").[1]  Nebo Ventures,

LLC, a creditor here, objects to the Motion on the basis that the settlement does not meet

---

[1]  Trustee's Motion for Approval of Settlement of Claims Pursuant to Fed. R. Bankr. P. 9019, Sept. 6, 2017, D.I. 57.  All docket references are to the Adversary Proceeding docket unless otherwise indicated.  The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.  Consideration of this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Neither party has contested my ability to enter a final order on the Motion.

the standard for approval in the Third Circuit under Rule 9019.[2] Another creditor, Russ

Whitmarsh, joined the objection.[3]

 An evidentiary hearing was held on October 26, 2017, at which Charles A.

Staziale, Jr., the chapter 7 trustee ("Trustee"), testified by way of proffer and on the witness

stand. The declaration of Michael Kupka, the Trustee's financial advisor, was admitted into

evidence and he also testified on the witness stand.[4] I took the matter under advisement.

**Background**

 1.    NovaPro Risk Solutions, LP ("NPR"), NovaPro Holdings, LLC, NovaPro

Risk Solutions, LP, LLC and NovaPro Risk Solutions, GP, LLC (collectively, "Debtors")

filed voluntary petitions under chapter 7 of the United States Bankruptcy Code on April 15,

2014. Charles A. Stanziale, Jr. was appointed as the trustee in each of the cases, which

were jointly administered. Debtors' cases were later substantively consolidated.[5]

 2.    On the petition date, Debtors had $1.98 in their bank accounts.[6]

 3.    The Trustee retained McCarter & English, LLP as counsel.[7] The Trustee also

retained MazarsUSA, LLP (f/k/a WeiserMazars, LLP) as its financial advisor specifically

---

[2] Objection of Nebo Ventures, LLC to Trustee's Motion for Approval of Settlement of Claims
Pursuant to Fed. R. Bankr. P. 9019, Sept. 20, 2017, D.I. 58.
[3] Joinder of Russ Whitmarsh to Objection of Nebo Ventures, LLC to Trustee's Motion for Approval
of Settlement of Claims Pursuant to Fed. R. Bankr. P. 9019, Oct. 12, 2017, Main Case D.I. 96.
[4] Declaration of Michael Kupka in Support of the Chapter 7 Trustee's Motion for Approval of
Settlement of Claims Pursuant to Fed. R. Bankr. P. 9019, Oct. 9, 2017, Main Case D.I. 94-1
("Kupka Declaration").
[5] Motion For Approval of Settlement Hearing Transcript 6:12–13, Oct. 26, 2017, D.I. 66 ("Hr'g
Tr.").
[6] Hr'g Tr. 6:14–16.
[7] Order Authorizing Retention and Employment of McCarter & English, LLP, as Counsel to the
Chapter 7 Trustee, *Nunc Pro Tunc* to April 15, 2014, June 19, 2014, Main Case D.I. 11.

to investigate transfers made to insiders, potential preference and fraudulent conveyance claims, provide forensic accounting services and prepare a solvency analysis.[8]

***The Prepetition Sale of Assets***

4.      Pre-bankruptcy, on July 15, 2011, NPR closed on a sale of all of its assets to Carl Warren & Company.[9] The purchase agreement provided for a payment upon closing, post-closing adjustments and an earn-out receivable based on revenue generated from NPR's former clients after the closing.

5.      On July 15, 2011, NPR received $5,315,000 in sale proceeds.[10] Between August and October of that year, NPR received another $1,542,509 in further sale proceeds related to holdbacks and working capital adjustments.[11] Nineteen months later, on February 19, 2013, NPR received additional sale proceeds of $197,615 on account of the earn-out receivable.[12]

***Claims against the Estates***

6.      The largest proofs of claim were filed by US Risk Insurance Group, Inc. ("U.S. Risk"), Nebo Ventures, and Whitmarsh.

7.      Both Nebo Ventures and Whitmarsh were embroiled in prepetition litigation with Debtors.[13]

---

[8] Application of the Chapter 7 Trustee for an Order Authorizing Retention and Employment of WeiserMazars LLP as Financial Advisor to the Chapter 7 Trustee, *Nunc Pro Tunc* to Dec. 12, 2014, Dec. 30, 2014, Main Case D.I. 45; Hr'g Tr. 51:1–10.
[9] Hr'g Tr. 15:2–6.
[10] Complaint, April 14, 2016, D.I. 1 at 6–7; Hr'g Tr. 15:17–16:3.
[11] Complaint 7; Hr'g Tr. 15:24–16:3.
[12] Hr'g Tr. 16:4–8.
[13] Hr'g Tr. 18:14–18, 23:10–23, 32:14–25.

8.      On July 1, 2011, Nebo Ventures sued NPR for breach of contract and fraud
for fees owed to Nebo Ventures on NPR's contract with the City of Atlanta.[14]  During the
litigation, NPR initially failed to disclose that it received a $1 million bonus from the City of
Atlanta, which would have resulted in additional fees payable to Nebo Ventures.[15]  After
trial, Nebo Ventures obtained a judgment of $1,437,357.86.[16]  It filed a proof of claim in the
same amount in the NPR bankruptcy case.[17]

9.      Whitmarsh is NPR's former chief operating officer.[18]  On May 18, 2011, he
was terminated.  On September 13, 2011, Whitmarsh filed an employment claim with the
American Arbitration Association.  He was awarded judgment in the amount of
$544,400.73 plus interest.  Mr. Whitmarsh filed a proof of claim in the amount of
$623,321.78 against the estates of both NPR and NovaPro Holdings, LLC.  Together, Nebo
Ventures and Whitmarsh account for 99% of the general unsecured claims.[19]

10.     As for administrative claims, McCarter & English is owed non-contingency
fees of $125,000[20] and MazarsUSA is owed $136,000.[21]

---

[14] Objection Ex. 1 (attaching a copy of *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga.
App. 836 (Ga Ct. App. 2013)).

[15] *Id.*

[16] Hr'g Tr. 14:16–18, 18:14–16.

[17] Claim 1, Case No. 14-10896.  The claim was originally filed in the amount of $3,600,000.00 on
Aug. 6, 2014, and was amended to $1,437,357.86 on Sept. 18, 2015.

[18] Hr'g Tr. 17:17–20.

[19] Hr'g Tr. 14:23–15:1; Claim 1, Case No. 14-10896; Claim 3, Case No. 14-10896.

[20] McCarter & English was retained in the main bankruptcy case on an hourly basis.  Application of
the Chapter 7 Trustee for an Order Authorizing Retention and Employment of McCarter & English,
LLP, as Counsel to the Chapter 7 Trustee *Nunc Pro Tunc* to April 15, 2014, May 29, 2014, Main
Case D.I. 5; McCarter & English was separately retained for the adversary proceeding on a 40%
contingency fee basis.  Order Modifying the Terms of the Retention of McCarter & English, LLP as
Counsel to Chapter 7 Trustee, Dec. 2, 2014, Main Case D.I. 44.

[21] Hr'g Tr. 11:19–12:1.

*The Adversary Proceeding*

11.    On April 4, 2016, the Trustee commenced this adversary proceeding against Defendants seeking avoidance of certain transfers and/or obligations, compensation for alleged damages, equitable relief, and disallowance and/or subordination of the proof of claim filed by U.S. Risk.[22]  In his Complaint, the Trustee seeks to recover, on various legal theories, approximately $3.34 million in transfers made by Debtors to U.S. Risk over the period of October 3, 2011 through July 10, 2012, and to avoid the obligations incurred in the entry of a Management Agreement with U.S. Risk.  Next, the Trustee seeks recoveries against Defendant Goss and Defendants Does I-X for breach of fiduciary duty or aiding and abetting breach of fiduciary duty in directing or permitting the transfers or the entry into the obligation.  The Trustee also seeks recoveries against all defendants on an alter ego theory. In this regard, the Trustee alleges that Defendants maintain direct or indirect ownership interests in Debtors, they conducted the Debtors' affairs, and they used Debtors as a vehicle to defraud Debtors' creditors.  The Trustee also alleges that each of Debtors' officers was an officer of U.S. Risk.[23]  Finally, the Trustee seeks to disallow and/or subordinate the $660,000 proof of claim filed by U.S. Risk against NPR.

---

[22] *See generally* Complaint; Hr'g Tr 8:12–25.  The testimony adduced from the witnesses by both the Trustee and Nebo Ventures assumed a certain familiarity with the underlying litigation.  As a result, I looked to the Complaint, to some extent, to describe the underlying causes of action.
[23] Complaint 5–6.

12.     The challenged transfers[24] and obligations are summarized below.

| Date | Amount[25] | Transfer/Obligation | Basis for Challenge |
|------|-----------|---------------------|---------------------|
| 7/1/2011 | $660,000 | Entry into Management Agreement | § 548(a)(1)(B)  constructive fraudulent conveyance<br>§ 544 and UFTA constructive fraudulent conveyance |
| 10/3/2011 | $1,772,012.15 | Intercompany Transfer | § 544 and UFTA actual fraudulent conveyance<br>§ 544 and UFTA constructive fraudulent conveyance |
| 2/8/2012 | $1,062,600 | Dividend | § 544 and UFTA actual fraudulent conveyance<br>§ 544 and UFTA constructive fraudulent conveyance<br>Unlawful distribution/dividend under state law |
| 2/8/2012 | $337,400 | Dividend | § 544 and UFTA actual fraudulent conveyance<br>§ 544 and UFTA constructive fraudulent conveyance<br>Unlawful distribution/dividend under state law |
| 4/16/2012 | $120,000 | $20,000/month management fee when Debtor no longer an operating entity | § 548(a)(1)(A) actual fraudulent conveyance<br>§ 548(a)(1)(B) constructive fraudulent conveyance<br>§ 544 and UFTA actual fraudulent conveyance<br>§ 544 and UFTA constructive fraudulent conveyance |
| 7/10/2012 | $50,000 | Intercompany  Transfer | § 544 and UFTA actual fraudulent conveyance<br>§ 544 and UFTA constructive fraudulent conveyance |

13.     In June 2016, each named Defendant moved to dismiss ("Motions to Dismiss") the Complaint, which the Trustee opposed.[26] The Motions to Dismiss state

---

[24] All transfers were made to U.S. Risk, except for the transfer of $337,400 on February 8, 2012, which was made to ISLLC.

[25] These dates and amounts are based on those in the Kupka Declaration.

[26] U.S. Risk Insurance Group, Inc. and Randall G. Goss's Motion to Dismiss, June 30, 2016, D.I. 11; Opening Brief in Support of U.S. Risk Insurance Group, Inc. and Randall G. Goss's Motion to Dismiss, June 30, 2016, D.I. 12; ISLLC Investments, Inc. a/k/a ILSSC Investments, Inc.'s Motion to Dismiss, June 30, 2016, D.I. 14; Opening Brief in Support of ISLLC Investments, Inc. a/k/a ILSSC Investments, Inc.'s Motion to Dismiss, June 30, 2016, D.I. 15; Consolidated Answering Brief

multiple grounds for dismissal, including that the claims are barred by applicable statutes of limitations, the Trustee lacks standing with respect to claims against two of the Debtors, and the Trustee fails to state causes of action. In addition to responding to the Motions to Dismiss, the Trustee moved to amend the Complaint, which Defendants opposed.[27]

14.    In March 2017, the Trustee and Defendants engaged in mediation, which was unsuccessful.

### The Settlement

15.    By the Settlement Motion, the Trustee seeks to settle all the claims asserted in the adversary proceeding. The settlement agreement provides for: (1) U.S. Risk to pay the Trustee $300,000; (2) U.S. Risk to withdraw its proof of claim and waive any other claims it may have; (3) a waiver of any § 502(h) claim; and (4) mutual releases of all claims.[28] The Trustee projects a 10% recovery to general unsecured creditors if the settlement is approved. [29] To facilitate that distribution, McCarter & English has agreed to write off $150,000 in non-contingency fees and Mazars has agreed to write off $75,000 in fees.[30]

### Legal Analysis

16.    Rule 9019 governs court approval of settlements in bankruptcy cases. Although Rule 9019 does not itself contain a standard for court approval of a settlement, the

---

in Opposition to Motions to Dismiss, July 29, 2016, D.I. 23; Reply Brief in Support of ISLLC Investments, Inc. a/k/a ILSSC Investments, Inc.'s Motion to Dismiss, Aug. 9, 2016, D.I. 24; Reply Brief in Support of U.S. Risk Insurance Group, Inc. and Randall G. Goss's Motion to Dismiss, Aug. 9, 2016, D.I. 25.

[27] Plaintiff's Motion For Leave to Amend the Complaint, Oct. 14, 2016, D.I. 37; U.S. Risk Insurance Group, Inc. and Randall G. Goss's Response to the Trustee's Motion for Leave to Amend, Oct. 31, 2016, D.I. 40; Reply Brief in Support of Plaintiffs' Motion for Leave to Amend Complaint, Nov. 21, 2016, D.I. 41.

[28] Motion at 4, Ex. A; Hr'g Tr. 10:19–11:1.

[29] Hr'g Tr. 69:11–15, 76:25–77:11.

[30] These arrangements are tied to approval of this settlement. Hr'g Tr. 77:1–11.

*Martin* factors are well established parameters for evaluating 9019 settlements in the Third Circuit.[31] The *Martin* factors are "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved; and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." [32]

17.    Whether to approve a settlement is within the sound discretion of the court.[33] The court need not be convinced that the settlement is the best possible compromise to approve it; instead, the court "need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."[34] Although the court may not substitute the Trustee's judgment for its own and instead must undertake its own, independent, reasoned analysis of the claims at issue, "a court may nonetheless take into account the [Trustee's] business judgment in recommending a settlement as well as the opinions of the [Trustee] and the parties to the settlement."[35]

18.    The Trustee bears the burden of persuasion to provide the court with sufficient information to conclude that the settlement is within the reasonable range of litigation possibilities.[36] But the court does not conduct a "mini-trial" on the merits. Instead, it canvasses the issues to see if the settlement falls below the lowest point in the range of reasonableness.

---

[31] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted).
[32] *Id.*
[33] *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014) (citation omitted).
[34] *Id.* (quoting *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008)).
[35] *In re NII Holdings, Inc.*, 536 B.R. 61, 100 (Bankr. S.D.N.Y. 2015) (citations omitted).
[36] *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (citations omitted) *aff'd*, No. 03-10323, 2006 WL 2842462 (D. Del. October 2, 2006).

19.    The Trustee contends that the settlement is in the best interest of the estates and its creditors.  He contends that the settlement will infuse funds into the estate permitting a meaningful distribution to creditors, and that continued litigation does not ensure such a result.  The Trustee argues that the cost of litigation and the risk of an unfavorable result support the reasonableness of the settlement.  He states that he made his decision after consultation with his counsel and financial advisor, and after considering not only what he learned through the mediation process, but what he perceived to be the mediator's view on the strengths and weaknesses of the claims and defenses in the adversary proceeding.

20.    Nebo Ventures makes two primary arguments in its Objection.  Nebo Ventures challenges the Trustee's decision to settle as based on unreliable information, obtained by informal discovery, from a party that has a history of altering documents in discovery.  Nebo Ventures also argues that the settlement amount of $300,000 does not sufficiently value the actual fraud claims against Defendants and the potential for punitive damages and an award of attorney fees.

*(i)    Probability of Success in Litigation*

21.    Setting aside the defenses raised in the Motions to Dismiss—which, if successful, would end the litigation in Defendants' favor—the disputes in the adversary proceeding mainly revolve around the Trustee's ability to prove two contentions.  First, that Debtors were insolvent on the date of each transfer and did not receive reasonably equivalent value therefore, and second, that Debtors had the intent to defraud their creditors when making the transfers.[37]

---

[37] For ease, references to "transfers" are meant to also include incurred obligations.

22.    At the hearing, both the Trustee and Mr. Kupka testified about the defenses raised by Defendants to the fraudulent conveyance claims, focusing on the two largest transfers. As for the $1,772.015.32 intercompany transfer, Defendants contend that this transfer was the repayment of a promissory note executed by U.S. Risk, which itself was executed to repay a third-party loan from an independent banking institution. Thus, Defendants contend that this transfer was made in exchange for reasonably equivalent value because the promissory note was satisfied. After speaking with his advisors, the Trustee is satisfied that this transfer was a repayment of intercompany obligations given for reasonably equivalent value.[38]

23.    As for the $1,062,600 dividend, Defendants challenge the Trustee's solvency analysis on the date of the transfer, February 8, 2012. To show that NPR was insolvent on the date of the transfer, the Trustee made two major adjustments to NPR's balance sheet.[39] The Trustee reduced the accounts receivable relating to the earn-out receivable from $1.8 million to $197,000, reducing NPR's net assets by $1.6 million.[40] The Trustee believes he was justified in making this reduction based on several factors, including the earn-out proceeds ultimately collected, NPR's tax returns and the underlying basis for the valuation of the earn-out receivable. Next, the Trustee increased NPR's legal liabilities as of February 8, 2012, by relying on the ultimate disposition of the litigation with Nebo Ventures and Whitmarsh.

24.    Defendants faulted the Trustee for making these adjustments and asserted that NPR was solvent on February 8, 2012. They contend that the valuation of the earn-out

---

[38] Hr'g Tr. 10:12–14, 55:12–56:16.
[39] Hr'g Tr. 57:19–59:4. Presumably, this argument would also apply to the $337,400 dividend made on the same date.
[40] Kupka Declaration 6–7; Hr'g Tr. 57:19–59:4.

receivable was performed by a third-party entity as part of the sale transaction, and thus NPR's reliance on it was proper. Defendants conclude, therefore, that the $1.6 million downward adjustment in assets is unjustified. Similarly, Defendants challenge the upward adjustment of liabilities claiming that the Trustee is impermissibly relying on hindsight.

25.    Mr. Kupka credibly testified that his adjustments to the balance sheet were legitimately subject to challenge and that determining what was known and knowable as of February 8, 2012, would be highly contested. He and the Trustee testified that, in considering these defenses, they heeded information learned during the mediation as well as the mediator's views of the claims and defenses. The Trustee also testified he had doubts about whether he could prove insolvency at the time of the dividend transfer.[41]

26.    As for the remainder of the claims, Defendants contend that the entry into the Management Agreement and any amounts paid thereunder (or otherwise for management services) were the payment of actual charges for the cost of providing services to Debtors, and the payments were made while Debtors were solvent.[42] The Trustee also recognized the significant hurdles that must be overcome under Delaware law to prevail on the breach of fiduciary duty claims.[43]

27.    Considering the defenses raised, the views of his professionals and the insight he received during the mediation, the Trustee believes that there is no assurance of a favorable outcome on the merits. His current view is that the claims against Defendants are more in the range of $600,000 (instead of $3.34 million) and thus this $300,000 settlement is

---

[41] Hr'g Tr. 9:21–10:5.
[42] Kupka Declaration 9.
[43] Id.

"commensurate with what the Trustee reasonably believes he could recover after engaging in prolonged and expensive litigation and eliminates the risk of an unfavorable outcome."[44]

28.    Nebo Ventures argues that the settlement should not be approved because of the Trustee's decision to use informal discovery.  Upon cross-examination, Nebo Ventures established that the Trustee did not propound formal discovery requests on Defendants.  But the evidence also shows that the Trustee, mainly through his financial advisors, reviewed significant amounts of financial information.  This information included general ledgers (current and historical, with a detailed record of all accounting transactions relating to assets, liabilities, equity, revenue, and expenses), bank statements, tax returns, the sale transaction documents, and other legal and financial documents as well as reports prepared by NPR's outside consultants.[45]  Additional information was requested from Carl Warren, several banking institutions, and other parties through informal document requests and Rule 2004 subpoenas.[46]  The Trustee also received information from U.S. Risk and its counsel both through the production of documents, several in person meetings, and, ultimately, through the mediation process.[47]  In total, Mr. Kupka reviewed thousands of pages of documents.[48]  Mr. Kupka also reviewed documents in the Nebo Ventures and Whitmarsh prepetition litigation.[49]

29.    Nebo Ventures argues that these efforts were insufficient and that formal discovery would have revealed more, especially in connection to the claims of actual fraud. The Court of Appeals of Georgia recently held, in a written opinion in the Nebo Ventures

---

[44] Motion at 8.
[45] Kupka Declaration 3.
[46] Kupka Declaration 3; Hr'g Tr. 7:2–8:11, 18:5–19:24.
[47] Hr'g Tr. 7:20–8:11.
[48] Hr'g Tr. 52:5–11.
[49] Kupka Declaration 3.

litigation, that certain of these Defendants admitted to altering documents produced in discovery in that litigation.[50] Nebo Ventures argues that statements and documents received by informal discovery, from a party that has a history of altering documents in discovery, cannot be trusted. As a result, any value calculation based on statements and documents obtained by informal discovery is unreliable and any settlement based on such an unreliable value calculation should not be approved. Nebo Ventures also argues that the Trustee is likely to prevail on his actual fraud claims against Defendants and if he does, the Trustee may receive punitive damages and attorney fees.

30.    Having reviewed the record, I find that the Trustee has shown that the litigation is subject to significant challenge. Defendants raised credible obstacles to the Trustee's success on the merits, including defenses such as reasonably equivalent value and solvency. While Nebo Ventures raised some doubt about Defendants' trustworthiness because of their history of altering documents produced in discovery in other litigation, ultimately that does not persuade me that this settlement should not be approved. Perhaps it would have been preferable for the Trustee to have engaged in formal discovery to dispel concerns about the reliability of the information exchanged between the Trustee, his counsel, and Defendants. But the Trustee's financial advisor relied on much more than just information from Defendants; he relied on documentation from multiple third-party sources. And there is no evidence that that the financial advisor's review of those documents was flawed.

---

[50] Objection Ex. 1 (attaching a copy of *Nebo Ventures, LLC v. NovaPro Risk Sols., L.P.*, 324 Ga. App. 836 (Ga Ct. App. 2013)).

31.    Nebo Ventures does not point me to a rule of procedure or case law suggesting that the Trustee had to engage in formal discovery with Defendants. To the contrary, a settlement should stand or fall on the sufficiency of its terms.[51] The Trustee's decision to conduct and rely on informal discovery is not inherently suspect because formal discovery does not constitute "a necessary ticket to the bargaining table."[52] Given Debtors' past conduct, the Trustee would have been justified in using formal discovery here. But I see no reason to reject this settlement because of the Trustee's decision to use informal discovery—a decision within his authority and discretion. I cannot conclude that the Trustee's decision to use informal discovery meaningfully changes the probability of success in litigation here.

32.    Finally, there is some merit to Nebo Ventures' argument that the Trustee provided little evidence about the merits of the other claims, including the actual fraud claim. It is true that the Trustee placed no emphasis on the actual fraud claims in his analysis of the settlement. But, both the Trustee and Mr. Kupka credited the challenges made to the balance sheet adjustments, which establishes solvency at the time of the transfers. This conclusion eliminates one of the significant "badges of fraud" that Nebo Ventures sought to establish at the hearing, giving the Trustee a reasonable basis to question whether there was actual intent to defraud creditors.[53]

---

[51] *Cf. In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (affirming a settlement over an objection when class counsel did not conduct formal discovery into certain claims before reaching a settlement, opting instead to use informal discovery); *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) (citation omitted) (affirming a class-action settlement over the objection of parties that requested court-ordered discovery).

[52] *Newby*, 394 F.3d at 306 (quotation omitted).

[53] The testimony does establish two badges of fraud: (1) payments to an insider, and (2) payments made while there was pending litigation. Hr'g Tr. 27:22–29:1. Nebo Ventures also tried to establish that the $1.77 million inter-company transfer was not for reasonably equivalent value. Suggested in the questions posed on cross-examination of Mr. Kupka was the idea that most of the operational

33.     Nebo Ventures also had an opportunity to establish the viability of the Trustee's actual fraud claims against Defendants.  Nebo Ventures could have called witnesses, including Mr. Whitmarsh, to testify about the allegations of actual fraud and the Trustee's probability of success on those claims.  It did not.[54]

34.     In evaluating a settlement under Rule 9019, I need not (and, arguably, should not) second-guess every strategic decision made by the Trustee.[55]  The Trustee has made a credible case that the largest claims here—the $1.77 million inter-company transfer and the $1.06 million dividend—may not be successful on any theory.  While additional testimony would have been helpful on the other theories of recovery, the testimony received and the reasonable application of it to the elements of the other causes of action show that the probability of success on the merits has significant challenges.

### (ii)     *Likely Difficulties in Collection*

35.     Neither party has raised concerns about collection.  This factor therefore is neutral and does not support either party.

---

expenses paid by the borrowed funds consisted of a $25,000 monthly salary paid for unnecessary management services.  Hr'g Tr. 36:2–9, 62:1–63:25.  Mr. Kupka confirmed that a portion of the original inter-company loan was for this purpose.  But this suggestion is not otherwise supported by anything in the record.  The Court sustained an objection to a portion of the questioning on the topic.  Hr'g Tr. 63:23–25.  This questioning did not negate the Trustee's conclusions that reasonably equivalent value was received in exchange for the $1.77 million transfer because the debt to U.S. Risk paid off debt to a third-party banking institution.

[54] Nebo Ventures was prepared to question Mr. Whitmarsh over the phone, but consistent with long-standing practice, I did not permit it.  Hr'g Tr. 68:1–21.

[55] *In re NII Holdings, Inc.*, 536 B.R. at 100 (citations omitted) ("a court may nonetheless take into account the [Trustee's] business judgment in recommending a settlement as well as the opinions of the [Trustee] and the parties to the settlement.").

### (iii)    *Complexity of Litigation and the Expense, Inconvenience and Delay Necessarily Attending It*

36.    The Trustee testified that continuing to litigate the case will entail significant costs and delay.[56] The Trustee's financial advisor is retained on an hourly basis. Going to trial would also likely include defending against other pretrial motions filed by Defendants, the costs of trial preparation, and expert witness fees. If this case goes to trial, the Trustee believes the litigation costs could eclipse the amount of the proposed settlement.[57]

37.    The Trustee also testified that this settlement merits approval because he has arranged for his counsel's law firm to write off $150,000 of non-contingency fees and he has arranged for his retained financial advisors to write off $75,000 of its fees.[58] Although the settlement's terms do not include these discounted professional fees, the Trustee argues that this $225,000 fee reduction—assuming the fees were otherwise reasonable and approved by the Court—is a material concession and supports settlement approval.

38.    In contrast, Nebo Ventures argues that the settlement does not merit approval at this stage of litigation. In its view, the Trustee's negotiating leverage would increase if he prevailed on the Motions to Dismiss. In other words, waiting to see the result of the Motions to Dismiss would not cost much and could increase the value of the claims. Thus, the settlement does not merit approval now.

39.    Here, the complexity of the litigation and the expense, inconvenience and delay necessarily attending it weighs in favor of approving the settlement. Nebo Ventures is correct that waiting for a ruling on the Motions to Dismiss will not involve much additional

---

[56] Hr'g Tr. 12:6–17.
[57] Trustee's Reply in Support of Motion For Approval of Settlement of Claims Pursuant to Fed. R. Bankr. P. 9019, Oct. 9, 2017, D.I. 60 at 10.
[58] Hr'g Tr. 76:25–77:11.

cost or delay. But the Motions to Dismiss are unlikely to be the final procedural maneuver before trial. The Trustee points out that going to trial would also involve defending against any other pretrial motions, the costs of trial preparation, and expert witness fees. He is correct. I am persuaded that this case's specific facts—including the procedural posture, the discounted professional fees, and the projected expense of going to trial—support approving this settlement.

### *(iv)    Paramount Interest of the Creditors*

40.     Nebo Ventures argues that the paramount interest of creditors does not favor settlement approval because 99% of the creditors object to the settlement. Indeed, if the decision was up to Nebo Ventures and Mr. Whitmarsh, they may prefer to take a gamble by taking this case to trial. Even so, I am persuaded that the settlement serves the paramount interest of creditors. This settlement provides creditors a modest recovery, includes the release of a claim with a face value of $660,000,[59] includes waived professional fees of $225,000, and eliminates the chance of an adverse outcome at trial.[60] For these reasons, the paramount interest of the creditors supports approval of this settlement.

**Conclusion**

Under the *Martin* factors, approval of the Trustee's proposed settlement is warranted. The credible defenses raised by Defendants suggest that the Trustee is justified in reducing the value of the $1.77 million inter-company transfer and $1 million dividend claims. If the

---

[59] I have no record on which to place a value on the release of this claim. But, the release does eliminate the need to litigate over the validity of the claim, and removes a sizable claim from the claims distribution pool.

[60] The Trustee testified that various alternative arrangements with Nebo Ventures were discussed, including selling the causes of action to Nebo Ventures or receiving funding from Nebo Ventures to continue the litigation. Nebo Ventures did not take the Trustee up on these options. Hr'g Tr. at 11:8–11.

defenses raised by Defendants were successful at trial, which is plausible, the remaining claims would be worth about $600,000.  But determining the exact value of these claims is unnecessary.  Instead, courts evaluate settlements under Rule 9019 by considering the range of reasonable litigation outcomes and determining if the settlement falls above the lowest point in the range.

I find that this settlement of $300,000, together with the waived professional fees of $225,000, U.S. Risk's released claim with a face value of $660,000, and the elimination of the chance of an adverse outcome—both at the motion to dismiss stage and at trial—falls within the range of reasonable litigation outcomes.  Though admittedly a closer call than I would like, or than perhaps was necessary, the Trustee has met his burden of persuasion to show that this settlement amount is above the lowest point in the range of reasonable litigation outcomes.  As a result, I will approve the settlement.

**WHEREFORE, it is HEREBY ORDERED that the Motion is GRANTED.**

Dated: May 4, 2018

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE